UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| RENASANT BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:10-cv-0302 |
| ERIC ERICSON, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | JUDGE SHARP |
| AND | ) | MAGISTRATE JUDGE GRIFFIN |
| | ) | |
| ERIC ERICSON, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TRICIA ERICSON, | ) | |
| | ) | |
| Additional Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RENASANT BANK, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**MEMORANDUM**

On February 27, 2012, the Court entered an Order and Final Judgment as to Liability

("Order") in this case. (Docket Entry No. 108.)  The Order awarded compensatory damages to

Renasant Bank ("Plaintiff") in the amount of $1,012,333.81 and to Eric Ericson ("Defendant" or

"Counter-Plaintiff") in the amount of $475,000.   The Court found that both Plaintiff and

Counter-Defendant were entitled to post-judgment interest, calculated from the date of the Order

and in accordance with 28 U.S.C. § 1961.  The Order also set forth a briefing schedule for

Plaintiff's claim for interest and costs of collection, including attorneys' fees.

Presently before the Court is Plaintiff's Motion to Alter the Judgment (Docket Entry No.

109), to which Defendant filed a response (Docket Entry No. 114).  Also presently before the

Court, and pursuant to the briefing schedule set forth in the Order, is Plaintiff's motion for an

award of interest and the costs of collection (Docket Entry No. 115), to which Defendant filed a

response (Docket Entry No. 118).

## ANALYSIS

### A.      Motion to Alter the Judgment

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff asks the Court to amend the

Order by setting off the judgment granted to Counter-Plaintiff against the judgment granted to

Plaintiff, resulting in one judgment for Plaintiff in the amount of $537,333.81, plus interest, costs

of collection, and attorneys' fees.  Proper reasons for granting a motion to alter or amend a

judgment include a clear error of law, newly discovered evidence, an intervening change in the

controlling law, or preventing manifest injustice.  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178

F.3d 804, 834 (6th Cir. 1999); *United States ex rel. Wall v. Circle Constr., LLC*, 700 F. Supp. 2d

926, 941 (M.D. Tenn. 2010).

Here, Plaintiff contends it would be manifestly unjust to deny a setoff in this case because

of the speculative possibility that Defendant might bring a collection action to enforce its own

judgment.   However, the authority cited by Plaintiff is entirely permissive, rather than

mandatory, concerning the Court's power to set off the judgments.  *See* Tenn. Code Ann. § 25-1-

103 (2000) ("Judgments of the same court <u>may</u> be set off against each other on motion[.]"

(emphasis added)).  In the absence of mandatory authority or an actual collection action brought

2

by Defendant, the Court finds that refusing to set off the judgments in this case would not work a manifest injustice. Therefore, the Court will deny Plaintiff's motion.

## B. Interest and Costs

### 1. Costs of Collection

The Note obligates the borrower (Defendant) to pay all costs of collection, including reasonable attorneys' fees. (*See* Docket Entry No. 1-1, at 3.) In this case, Plaintiff's counsel seeks an award of fees and costs equal to $258,369.35.[1] This requested award consists of $240,991.69 in attorneys' fees already incurred, $7,377.89 in expenses already incurred, and $10,000 in additional fees and expenses that counsel expects to incur in collecting the judgment. Plaintiff submits the affidavit of James R. Kelley, one of its attorneys, and redacted billing statements in support of its request for the costs of collection.

The party seeking attorneys' fees must show that it is entitled to the requested award, and the Court may reduce the award where the documentation is inadequate. *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999); *McKay v. Reliance Standard Life Ins. Co.*, 654 F. Supp. 2d 731, 744 (E.D. Tenn. 2009). Here, the Kelley Affidavit does not adequately document why Plaintiff is entitled to a speculative award of $10,000 for the fees and costs of collecting the judgment. Therefore, the Court will subtract these amounts from the requested award. The Court will now consider the reasonableness of counsel's request for $248,369.58 in attorneys' fees and expenses.

---

[1] The Note provides that "reasonable attorneys' fees shall be construed to mean 10% of the principal sum named in this note, or such larger fee that the court may determine to be reasonable and just." (Docket Entry No. 1-1, at 3.) Without more, this provision would set a $400,000 floor for the attorney fee award in this case. The Court need not analyze the relevance of this provision because Plaintiff has effectively waived its enforcement by requesting a lesser amount.

Tennessee law governs the enforcement of the Note, including its provision for costs of collection. *See Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011). Where the contract calls for the award of a "reasonable" fee, "the award <u>must</u> be based on the guidelines by which a reasonable fee is determined, and not simply a percentage of recovery." *Nutritional Support Servs., Ltd. v. Taylor*, 803 S.W.2d 213, 216 (Tenn. 1991); *Ferguson Harbour Inc. v. Flash Market, Inc.*, 124 S.W.3d 541, 552-53 (Tenn. Ct. App. 2003). Tennessee Rule of Professional Conduct 1.5(a)(1) sets forth the ten factors for determining the reasonableness of a fee:

(1)     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)     The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)     The fee customarily charged in the locality for similar legal services;

(4)     The amount involved and the results obtained;

(5)     The time limitations imposed by the client or by the circumstances;

(6)     The nature and length of the professional relationship with the client;

(7)     The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)     Whether the fee is fixed or contingent;

(9)     Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10)    Whether the fee agreement is in writing.

*Cf. Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176-77 (Tenn. 2011).

Applied to this case, Plaintiff entered a written fee agreement with capable, experienced litigation counsel billing at fixed hourly rates. The Kelley Affidavit represents that counsel

charged hourly rates equal to or lesser than the rates customarily billed by attorneys with comparable experience. Nothing in the Kelley Affidavit indicates that the second, fifth, sixth, or ninth factors bear on the fee determination in this case. *See White v. McBride*, 937 S.W.2d 796, 800 (Tenn. 1996) (explaining that particular circumstances in a given case ultimately determine the reasonableness of a fee).

In this case, the first and fourth factors play the greatest role in determining the reasonableness of the requested fee. This action required considerable time and labor, as Defendant retained well-qualified counsel to file numerous counterclaims and otherwise contest Plaintiff's collection efforts vigorously. The parties engaged in extensive discovery and motion practice before ultimately trying the case over a four-day period. The extent of the litigation required a higher level of skill than the typical collection action. Nonetheless, the Court finds that the questions involved did not present a particularly high level of novelty or difficulty. The case instead presented familiar issues in the areas of contract law and business torts.

While the case involved a relatively large amount for a collection action (given that the Note financed the construction of a multimillion dollar-value home near the coast of Florida), Plaintiff's counsel obtained a mixed result in the case falling well short of total victory. Plaintiff argued that it should receive a judgment of nearly $2.3 million, but the Court ultimately awarded Plaintiff less than half that amount. While the application of rigid proportions would be inappropriate, the gap between the requested recovery and the judgment ultimately awarded must bear on the reasonableness of the attorneys' fees. Furthermore, the Court must consider that, while Plaintiff's counsel successfully defended against most counterclaims (including the allegations of fraud *ab initio* that would have effectively unwound the deal), Defendant succeeded on his breach of oral contract claim and received a $475,000 judgment in his favor.

Taking into account all the relevant factors, the Court finds that a reduction of the requested fee is warranted. The Court will award Plaintiff's counsel a reasonable attorneys' fee of $161,000.

### 2.    Pre-judgment Interest

Defendant has set forth two arguments for denying Plaintiff pre-judgment interest altogether, neither of which the Court finds meritorious. First, Defendant contends that Plaintiff committed "unconscionable conduct" as defined by Tennessee Code Annotated section 47-14-117(c) (2001). That statute prohibits the recovery of interest where the lender commits "any calculated violation of statutory limitations on interest, loan charges, commitment fees, or brokerage commissions with full awareness of those limitations." *Id.* § 47-14-117(c)(2). Here, Plaintiff did not charge interest levels above statutory maximums but instead sought interest amounts to which, per the Court's findings and conclusions, Plaintiff was not entitled. The Court finds, however, that Plaintiff had a good-faith belief it was entitled to those amounts and did not act with "full awareness" of the contrary factual and legal findings ultimately made by the Court. Therefore, Plaintiff's conduct was not unconscionable.

Second, Defendant contends that Plaintiff should, as a matter of equity, be precluded from seeking prejudgment interest because it sought an "artificially inflated" interest award at trial. (*See* Docket Entry No. 118, at 4.) The Court declines to make such a ruling in equity. Plaintiff's brief on the pre-judgment interest issue reflects the Court's actual findings and conclusions after considering the evidence introduced at trial and assists the Court in the correct calculation of pre-judgment interest.

Having determined that Plaintiff is entitled to pre-judgment interest, the Court makes the following findings and conclusions. Defendant agreed to pay post-maturity interest on the

unpaid balance of the Note at the same rate of interest in effect before maturity. The interest rate

in effect prior to the Note's maturity was 4%. This rate does not exceed the statutory maximum.

*Cf.* Tenn. Code Ann. §§ 47-14-103, 123 (2001). The Note provides for the calculation of interest

on an Actual/365 basis.

Based on the above findings, the Court calculates pre-judgment interest as follows. From

November 22, 2009, the date after the maturity of the $4,000,000 Note, until January 15, 2010,

the date that Plaintiff foreclosed on the third-party certificate of deposit pledged as additional

collateral for the loan, the accrued interest is calculated as follows:

| | |
|---|---|
| Principal balance | $4,000,000 |
| x Daily periodic interest rate | .04/365 |
| x Number of Days | 55 |
| Accrued interest | $24,109.59 |

The foreclosure on the certificate of deposit reduced the principal balance on the Note to

$3,000,000.[2] From January 16, 2010 through July 1, 2011, the date that Renasant received and

applied the proceeds from the sale of the house, the accrued interest is calculated as follows:

| | |
|---|---|
| Principal balance | $3,000,000 |
| x Daily periodic interest rate | .04/365 |
| x Number of Days | 532 |
| Accrued interest | $174,904.11 |

---

[2] Because the Court declines to amend the judgment and instead treats the $475,000 amount for Plaintiff's breach of oral contract as a separate judgment, the Court does not reduce the principal balance of the loan by that amount.

The sale of the house reduced the principal balance of the Note to $960,961.33. From July 2, 2011 through February 27, 2012, the date of this Court's Order, the accrued interest is calculated as follows:

| | |
|---|---|
| Principal balance | $960,961.33 |
| x Daily periodic interest rate | .04/365 |
| x Number of Days | 241 |
| Accrued interest | $25,379.91 |

The total amount of Plaintiff's accrued pre-judgment interest totals $224,393.61.

### 3. Post-judgment Interest

#### a. Plaintiff Renasant Bank

Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C.A. § 1961(a) (2006). The parties agree that, for the week of February 24, 2012, the applicable rate was 0.17%. The Court will apply this rate to the $1,012,333.81 judgment awarded in Plaintiff's favor. From February 28, 2012 through May 29, 2012, the date of this memorandum, Plaintiff is entitled to post-judgment interest calculated as follows:

| | |
|---|---|
| Amount of judgment | $1,012,333.81 |
| x Daily periodic interest rate | .0017/365 |
| x Number of days | 92 |
| Accrued interest | $433.78 |

Going forward, interest on the total judgment of $1,398,161.20 in Plaintiff's favor ($1,012,333.81 liability judgment plus $224,393.61 in pre-judgment interest plus $161,000 in reasonable attorneys' fees plus $433.78 in post-judgment interest) accruing at the rate of 0.17% results in a daily interest amount of $6.51.

### b. Defendant/Counter-Plaintiff Eric Ericson

Pursuant to the Court's prior Order, Ericson is also entitled to post-judgment interest on his $475,000 judgment for Plaintiff's breach of oral contract. (*See* Docket Entry No. 108.) Because the judgments were issued on the same date, the rate and days in the calculation are the same numbers used in the calculation of Plaintiff's post-judgment interest award. From February 28, 2012 through May 29, 2012, Defendant is entitled to post-judgment interest calculated as follows:

| | |
|---|---|
| Amount of judgment | $475,000 |
| x Daily periodic interest rate | .0017/365 |
| x Number of days | 92 |
| Accrued interest | $203.53 |

Going forward, interest on the total judgment of $475,203.53 in Defendant's favor ($475,000 liability judgment plus $203.53 in post-judgment interest) accruing at the rate of 0.17% results in a daily interest amount of $2.21.

### CONCLUSION

For the reasons discussed herein, the Court will deny Plaintiff's motion to alter or amend the judgment. (Docket Entry No. 109.) The Court will grant in part Plaintiff's motion for an award of interest and the costs of collection. (Docket Entry No. 115.) The Court will award Plaintiff $161,000 in reasonable attorneys' fees, $224,393.61 in accrued pre-judgment interest,

and $433.78 in accrued post-judgment interest.  The Clerk shall enter final judgment for Plaintiff in the amount of $1,398,161.20.  Also, pursuant to 28 U.S.C.A. section 1961, the Court will award Defendant/Counter-Plaintiff $203.53 in accrued post-judgment interest.  The Clerk shall enter final judgment for Defendant/Counter-Plaintiff in the amount of $475,203.53.

It is so ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE